**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **R.H. COCHRAN & ASSOCIATES, INC.,** | ) | **CASE NO.1:07CV772** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **SHEET METAL WORKERS INTERNATIONAL ASSOCIATION LOCAL UNION NO.33,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff's R.H Cochran & Associates, Inc. ("RHCA") (ECF #17)  and Defendant's Sheet Metal Workers International Association, Local Union No. 33 ("Local 33") (ECF #16) Motions for Summary Judgment.  For the following reasons, the Court denies Defendant's Motion and grants Plaintiff's Motion.

**FACTS**

Plaintiff brings its claims before this Court pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA") as amended, 29 U.S.C. §185.  Plaintiff and

1

Defendant are parties to a Collective Bargaining Agreement ('CBA") that became effective on May 1, 2004 and runs to April 30, 2009.  Under the terms of  the CBA, the parties agreed to submit to binding arbitration certain grievances as set forth in Article X of the CBA.

Plaintiff is a contractor that tests and balances heating, ventilation and air conditioning systems.  At issue is the bargained for compensation employees receive for travel outside of their district.  Pursuant to Addendum D of the CBA, employees are to be paid $.60 per mile for all travel outside the district.  It is undisputed, that sometime in November of 2004, Plaintiff altered the express terms of Addendum D.  There is a dispute whether the parties agreed to the change.  Plaintiff contends the employees to whom the change applied agreed to the change.  The employees state that Plaintiff "made it clear that any complaints to the Union over the travel policy would result in immediate termination." (Barbian, English, Hansen, McArthur affidavits).  A grievance was filed by the Union on August 2, 2006.  It is undisputed the Union was informed of the CBA violation more than thirty days prior to the date the Union filed a grievance.  Article X of the CBA contains the relevant arbitration clause at issue before this Court.  It states:

The Union and the Employer, whether party to this Agreement independently or as a member of a Multi-Employer bargaining unit, agree to utilize and be bound by this Article.

SECTION 1: Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible.  Both parties may participate in conferences through representatives of their choice.  The local Employers' Association or the Local Union, on its own initiative, may submit grievances for determination by the Board as provided in this Section.  The grievance procedure set forth in this Article applies only to Labor-Management disputes.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

After a hearing before the arbitration panel, the panel awarded Defendant $40,862.78 for

2

violations of CBA.

Plaintiff seeks to have the adverse decision by an arbitration panel vacated because it "is contrary to and ignores the terms of the CBA..."  Furthermore, Plaintiff contends the decision by the arbitration panel failed to apply the terms of the CBA, violates public policy and federal law and the arbitration panel acted outside its authority.

Defendant contends Plaintiff never raised the issue of the untimeliness of the grievance at the arbitration hearing and such failure acts as a waiver.  Also, the Defendant contends it did timely file the grievance after it completed an initial investigation of the claims by RHCA employees.

### STANDARD OF REVIEW

**Summary Judgment**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

In *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 581 (6th Cir.1992) the Sixth Circuit held, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict ..." quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  The Sixth Circuit went on to say, "the 'mere possibility' of a factual dispute is not enough. Rather, in order to defeat summary judgment a

4

plaintiff must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary. Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell* at 581.

**Arbitration Review**

In discussing the standard of review in arbitration award cases, the Sixth Circuit has held. "our review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence."  (quotations omitted). *Tenn. Valley Auth. v. Tenn. Valley Trades and Labor Council,* 184 F.3d 510, 514-15 (6th Cir.1999). The Sixth Circuit has held, "we will consider only the questions of 'procedural aberration' outlined by the Supreme Court in *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29 (1987), and *Major League Baseball Players Association v. Garvey,* 532 U.S. 504 (2001)." *Truck Drivers Local No. 164 v. Allied Waste Systems, Inc.,* ____ F.3d ____ 2008 WL 50090 *4 (6th Cir. 2008).

The standard of review on a motion to vacate an arbitration award was set forth by the Sixth Circuit in *Michigan Family Resources, Inc., v. Service Employees International Union Local 517M*, 476 F.3d 746, 753 (6th Cir. 2007).  The reviewing court must consider the following three questions: (1) "[d]id the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration? (2) Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, (3) was the arbitrator 'arguably construing or applying the contract'?" The Sixth Circuit went on to say, "[s]o long as the arbitrator does not offend any of these requirements, the request

5

for judicial intervention should be resisted even though the arbitrator made "serious,"

"improvident" or "silly" errors in resolving the merits of the dispute." *Id.*

## LAW AND ANALYSIS

Upon review of the briefs and supporting materials the Court finds there is no evidence

and the parties do not contend, that the arbitrators committed fraud, had a conflict of interest or

otherwise acted dishonestly.  In *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363

U.S. 574 (1960), the Supreme Court held federal courts, not arbitrators, should determine

whether a collective bargaining agreement requires a dispute to be resolved through arbitration.

See also, *Michigan Family* at 750.  The Supreme Court in *United Steelworkers* held, '[a]n order

to arbitrate the particular grievance should not be denied unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute. Doubts should be resolved in favor of coverage." *Id.* at 582-83.

The Sixth Circuit in *United Steelworkers of America, AFL-CIO-CLC v. Saint Gobain

Ceramics & Plastics, Inc.,* 505 F.3d 417 (6th Cir. 2007) held there is a presumption that disputes

over timeliness provisions are for an arbitrator to decide and when the collective bargaining

agreement is silent as to whether courts or arbitrators should decide a question of timeliness the

default position militates in favor of arbitration. Therefore, this Court must first determine

whether the arbitration panel acted outside its authority by "resolving a dispute not committed to

arbitration."

Article X of the CBA states:

The Union and the Employer, whether party to this Agreement independently or as a
member of a Multi-Employer bargaining unit, agree to utilize and be bound by this
Article.

6

SECTION 1: Grievances of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible.  Both parties may participate in conferences through representatives of their choice.  The local Employers' Association or the Local Union, on its own initiative, may submit grievances for determination by the Board as provided in this Section.  The grievance procedure set forth in this Article applies only to Labor-Management disputes.

To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.

[CBA, pp. 19-20 (emphasis added).]

The CBA is silent as to whether courts or the arbitration panel should decide the issue of the timeliness of a grievance.  Therefore, pursuant to *Saint Gobain*, this Court finds the issue of timeliness was properly before the arbitrators.

Plaintiff, in its Amended Complaint, contends the arbitration panel "acted outside the scope of its authority by resolving a dispute not properly committed to arbitration pursuant to the express terms of the CBA". (Amended Complaint para. 36).  The Sixth Circuit has "severely curtailed the scope of authority concept".  *Truck Drivers Local* at *5.  "An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Michigan Family Resources,* 475 F.3d at 756.   In its Amended Complaint, Plaintiff contends the arbitration panel, "failed to properly apply the terms of the CBA." (Amended Complaint at para. 37)  Therefore, the Court finds Plaintiff has plead both an "acting outside of its scope" and an "arguably construing and applying" argument.  However, in reviewing the motions and responsive briefs of both parties it is clear Plaintiff is challenging the interpretation and application of the facts to the express terms of the CBA.  In fact, Plaintiff never argues, nor

7

offers evidence, that it objected to appearing before the arbitration panel.  Rather, it continuously and consistently contends it argued the untimeliness of the grievance as a defense in the arbitration hearing.  While Plaintiff offers evidence it argued the untimeliness of the grievance in the arbitration hearing, it has not challenged the right of the arbitration panel to determine the timeliness of the grievance.  Nowhere in its Motion for Summary Judgment does Plaintiff contend the arbitration panel should never have heard the issue of the timeliness of the grievance and nowhere in its summary judgment motion does Plaintiff contend the arbitration panel was without jurisdiction to hear arguments on the untimeliness of the grievance.  Both sides presented evidence to the panel of the timeliness or untimeliness of the grievance.   Therefore, the Court finds Plaintiff has waived the scope of authority claim insofar as it applies to the authority of the arbitration panel to hear the untimeliness argument.

In addition, there is no evidence in the minutes Plaintiff argued the issue of the panel's jurisdiction to hear the timeliness issue.    "A court reviewing an arbitration award cannot consider issues not presented to the arbitrators." *Ohio and Vicinity Regional Council of Carpenters v. Precision Flooring,* No. 3:04CV7025, unreported, 2004 WL 161856 (N.D.Ohio July 20, 2004), citing *National Wrecking Co. v. Int'l Brotherhood of Teamsters, Local 731,* 990 F.2d 957, 960-961 (7th Cir.1993).  Therefore, even if this Court were to consider Plaintiff's scope of authority claim on the jurisdiction of the arbitration panel to hear the timeliness issue, it would find it waived for failure to raise it before the arbitration panel.

Having determined Plaintiff has waived any scope of authority claim on the authority of the arbitration panel to hear the timeliness issue, the Court turns its attention to whether the arbitrators improperly construed and applied the CBA.  As a threshold matter, the Court finds

8

Plaintiff did raise the issue of the timeliness of the grievance before the arbitration panel.  Both

sides have submitted affidavits with Plaintiff stating it did affirmatively raise the objection and

Defendant attesting Plaintiff failed to raise the issue of timeliness.  However, in reviewing the

minutes of the arbitration panel proceedings, the Court finds evidence strongly supportive of

Plaintiff's contention that it did, in fact, raise the untimeliness of the filing of the grievance

before the arbitration panel.  On page 5 of the minutes entry, the following exchange is recorded:

> "John stated to Lou: (John is John A. Balanik, RHCA representative.  Lou is Lou Barbian
>
> a former employee of RHCA.  Charles is Charles McArthur a former employee of
>
> RHCA).  Charles stated that he wasn't the one that contacted the Union about
>
> this ordeal; they say you were the first to contact.
>
> Mike stated:    (Mike is Michael Coleman representative of Local 33).  I object I don't
>
> know the relevancy that has with any of this.
>
> John stated:    I just wanted to know why he waited so long after he quit R. H. Cochran
>
> to come forward to the Union and make a complaint.
>
> The Chair stated that once the grievance is heard, the Business Agent has 30 days to file
>
> the grievance. Like if one of my employees had a grievance, but did not tell anyone for
>
> six months and then talked to Tim Miller, he has 30 days to file the grievance.  To answer
>
> your question on why Charles or anyone waited so long to go to Mike Coleman, nobody
>
> has that answer."

(Parentheticals added for identification).

It is important to note the transcript of the proceedings was not a word for word

transcription akin to a proceeding on the record in a United States District Court.  The recording

of the minutes is replete with statements such as "Mike handed out Exhibit A and read his

opening statement"; "Mike proceeded to explain how he calculated the mileage"; (Tr. pg 1)

"Tim explained how Resolution 78 works".   Therefore, it is clear that everything that was said

in the proceedings was not transcribed.  Neither were the parties' opening statements transcribed.

Plaintiff and Defendant have both submitted contradictory affidavits as to whether Plaintiff

raised the issue of the untimeliness of the grievance.  However, the above referenced dialogue,

from page five of the minutes, demonstrates the panel considered and interpreted the thirty-day

limitation period for bringing a grievance as set forth in Article X.  Therefore, the only

reasonable conclusion this Court can make is the arbitrators were confronted with a challenge to

the timeliness of the grievance.  In doing so, the arbitrators proceeded to interpret the second

paragraph of Section 1 of Article X.

      In proceeding with its analysis of Plaintiff's claim that the arbitrators failed to arguably

construe or apply the CBA, this Court is mindful of the heavy presumptions in favor of

upholding the award of the arbitrators.  When analyzing such a claim, the Sixth Circuit has

provided the following guidance for District Courts to consider:

> The Court's repeated insistence that the federal courts must tolerate
> "serious arbitral errors suggests that judicial consideration of the
> merits of a dispute is the rare exception, not the rule. At the same
> time, we cannot ignore the specter that an arbitration decision
> could be so "ignor[ant]" of the contract's "plain language," *Misco,*
> 484 U.S. at 38, 108 S.Ct. 364, as to make implausible any
> contention that the arbitrator was construing the contract. An
> interpretation of a contract thus could be so untethered to" the
> terms of the agreement, to borrow a phrase from our Circuit
> Justice, *Garvey,* 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J.,
> dissenting), that it would cast doubt on whether the arbitrator
> indeed was engaged in interpretation. Such an exception of course
> is reserved for the rare case. For in most cases, it will suffice to
> enforce the award that the arbitrator appeared to be engaged in

> interpretation, and if there is doubt we will presume that the arbitrator was doing just that. *United Steelworkers v. Warrior & Gulf Navigation Co.,,* 363 U.S. 574, 582-83, (1960), [full citation added] ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").
>
> This view of the "arguably construing" inquiry no doubt will permit only the most egregious awards to be vacated. But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements, ... and a view whose imperfections can be remedied by selecting better arbitrators.

*Michigan Family*, at 753-54.

When discussing relevant Supreme Court case law in *Michigan Family*, the Sixth Circuit noted, "[i]n both cases, the Court held that once it was established that the arbitrator was construing or applying the contract (and acting within the scope of his authority), it made no difference whether the arbitrator had committed "serious," "improvident" or even "silly" errors in resolving the merits of the dispute." *Id.*

On page five of the minutes of the arbitration hearing the Chair clearly interpreted the thirty-day time period for filing a valid grievance. "The Chair stated that once the grievance is heard, the Business Agent has 30 days to file the grievance. Like if one of my employees had a grievance, but did not tell anyone for six months and then talked to Tim Miller, he has 30 days to file the grievance." Whether such an interpretation is correct in the opinion of this Court is irrelevant to its analysis. It is the arbitrators interpretation the parties bargained for, not this Court's and the parties agreed to be bound by the arbitrators' interpretation. Therefore, the Court concludes the arbitrator was engaged in interpreting, whether rightly or wrongly, the relevant Article X provision.

11

The minutes of the arbitration hearing do not demonstrate how the panel arrived at the conclusion, apparent from the ultimate decision in favor of the Defendant, that the grievance was timely filed.  Again, in referring to the Sixth Circuit's opinion in *Michigan Family,* the Court finds the arbitrator is not obligated to issue a written decision justifying its award.  *Id* at 756.  Furthermore, "vacating awards based on flawed chains of reasoning may well encourage arbitrators to 'play it safe by writing no supporting opinions." *Id.* citing *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598 (1960).  The decision of the arbitration panel does not discuss how the panel found the grievance to be timely, nor does it even discuss the timeliness of the grievance.

However, the Sixth Circuit has vacated an arbitration award where the evidence before the arbitration panel demonstrated the grievance was untimely filed.  See *Paper, Allied Industrial, Chemical & Energy Workers, Local Union No. 5-998 v. LWD, Inc.,* 99 Fed. Appx. 683, 685 (6th Cir. 2004), ("arbitrator's decision on the timeliness of the grievance was so far outside the evidence in the case and the explicit requirement of the agreement that it did not draw its essence from the bargain the parties made.") Even in light of the *Michigan Family* decision and its progeny, there is nothing in the *LWD*, *Inc.*, opinion that would lead this Court to believe its rationale was presumptively obsolete or overturned.

Turning now to the arbitration decision, this Court finds the arbitration panel's decision wholly ignores the timeliness of the grievance before it.  There are no findings of fact on the timeliness issue contained in the decision of the arbitration panel.  Rather, the only evidence before the panel demonstrates the Union's grievance was untimely.

Once again, the Court finds the arbitrators acted within their scope of authority by

12

interpreting the collective bargaining agreement's timeliness clause to mean that once an employee talked to a Union representative about the grievance the Union had thirty days to file the grievance in order for it to be untimely.  Since the parties are bound by the arbitrators interpretation of the timeliness clause this interpretation controls and must be given its effect by this Court.  In light of this interpretation, the Court finds the arbitrators failed to apply this definition to the facts before them.  The only evidence in the minutes of the arbitration demonstrates the Union was made aware of the grievance well outside the thirty-day limitation period.  At page six of the minutes, Michael Coleman, Union representative, asked Rick Hansen an employee of Plaintiff,

> "In May Charles (Charles McArthur, Jr. an employee of Plaintiff) made a call to Andy Farmer (Union Representative), were you present when that call was made?"
>
> Rick responded: "yes."
>
> Mike stated to Rick: "Charles said that a couple of minutes after the phone call to Andy Farmer he said he received a phone call from R.H. Cochran."
>
> Rick responded: "Yes, but I don't know who it was that called."
>
> Mike asked Rick: "Was it regarding the fact that Charles called the Union Hall?"
>
> Rick responded: "Yes."

(Parentheticals added for identification).

   This discussion is the only evidence from the record discussing when the Union was first contacted about Plaintiff's changes to the travel pay portion of the CBA.  Though the record is unclear what year Charles called the Union and spoke to Andy Farmer, it is irrelevant.  May of any year  would have been outside the thirty-day period for bringing a valid grievance.  The

Defendant's own Motion for Summary Judgment confirms Lou Barbian, an ex-RHCA employee contacted Defendant on June 21, 2006, and informed them of the improper travel pay policy by RHCA.  The Defendant contends the grievance was not filed until August 2, 2006, to allow the Union time to investigate the travel pay policy.  However, the Court finds there is no provision in the CBA permitting a tolling of the thirty-day period for investigative inquiry.  As Plaintiff contends, and this Court agrees, the thirty-day period from notification to filing *is* the investigative period contemplated by the parties in the CBA.

This Court is not permitted, under its limited review, to dispute the fact-finding of an arbitrator.  See *Misco* at 371.  However, the Court in this case, is not disputing the findings of fact of the arbitrators because it can find no such findings in the minutes or the decision.  Rather, the record is wholly devoid of a basis upon which the arbitrators could have reached the conclusion that the grievance was timely filed.  The arbitrators' apparent conclusion that the grievance was timely has no basis in the facts before the panel and this case falls within that "rare exception" discussed in *Michigan Family* and supported by *LWD, Inc.,* wherein the arbitrators could not have arguably been applying Article X to the facts before them.  As such, the Court must vacate the arbitration award as it failed to "draw its essence" from the CBA.

Because Article X contemplates that a decision on the merits of each grievance will be reached only upon the finding that a valid grievance exists, it was then outside the scope of the authority of the arbitrators to reach a determination on the merits of an invalid grievance. Because the facts before the panel demonstrate that by its own definition, the panel could only find the grievance untimely and therefore, invalid, the arbitrators at this point in the proceedings were without authority to proceed to make a determination on the merits of the grievance.  By

14

doing so, the arbitrators acted outside the scope of their authority by ruling on the merits of an invalid grievance which was outside the contemplation of the parties and the CBA.

This Court finds the arbitrators failed to arguably apply the terms of the CBA to the facts before them.  The facts clearly demonstrate the grievance was untimely filed and any determination on the merits of the invalid grievance was outside the scope of the authority of the arbitration panel.  Therefore, the Court grants Plaintiff's Motion for Summary Judgment and Vacates the Arbitration award against it.  The Court denies Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


 S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

February 12, 2008